UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Linda Lee Sipple, on behalf of herself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br>　vs.<br><br>Zions Bancorporation, N.A.,<br><br>　　　　　　　Defendant. | Case No.: 2:21-cv-00904-GMN-NJK<br><br>**ORDER** |

Pending before the Court is the Motion to Remand, (ECF No. 10), filed by Plaintiff Linda Lee Sipple ("Plaintiff"). Defendant Zions Bancorporation, N.A. ("Defendant") filed a Response, (ECF No. 18), and Plaintiff filed a Reply, (ECF No. 20).

For the reasons discussed below, Plaintiff's Motion to Remand, is **GRANTED**.

I.  **BACKGROUND**

This case arises out of Plaintiff's claims that Defendant charges Foreign Traction Fees ("FT Fees") for purchases made online when the purchaser is physically present in the United States. (Compl. ¶ 1, ECF No. 1-1). Defendant is a federally insured bank operating in Texas, California, Oregon, Washington, Arizona, Nevada, New Mexico, Colorado, and Utah, using the following trade names: AmegyBank, California Bank & Trust, The Commerce Bank of Oregon, The Commerce Bank of Washington, National Bank of Arizona, Nevada State Bank, VectraBank Colorado, and Zions Bank. (Compl. ¶ 9); (Pet. Removal ¶ 22, ECF No. 1). Plaintiff has a checking account through Defendant's Nevada State Bank division. (Compl. ¶ 8).

Plaintiff alleges that the account documents provided to Defendant's customers indicate that FT Fees will only be assessed when an account holder uses his or her debit card in a foreign country. (*Id.* ¶ 2). Defendant allegedly promises that it will only assess FT Fees on card

transactions made outside of the United States. (*Id.* ¶ 3).  Nonetheless, Plaintiff claims that Defendant assessed a 2–3% FT Fee on four of her online purchases, even though she was physically present in the United States at the time each purchase was made. (*Id.* ¶¶ 17–23).

On February 17, 2021, Plaintiff filed this prospective class action complaint in Nevada state court on behalf of herself and a class of all similarly situated individuals who have been improperly charged FT Fees by Defendant. (Compl. ¶ 1); (Pet. Removal ¶ 2).  The Complaint asserts two claims: (1) breach of contract on behalf of a nationwide class; and (2) violation of the Nevada Deceptive Trade Practices Act, Nev. Rev. State. § 598.0903, *et seq.*, on behalf of a Nevada subclass. (Compl. ¶¶ 53–69).  Plaintiff defines the national class as "all holders of a Zions checking account who, within the applicable statute of limitations preceding the filing of this lawsuit, incurred an FT Fee on a transaction made in the United States." (*Id.* ¶ 43). Plaintiff defines the Nevada class as "all holders of a Zions checking account in the State of Nevada who, within the applicable statute of limitations preceding the filing of this lawsuit, incurred an FT Fee on a transaction made in the United States." (*Id.*).

On May 7, 2021, Defendant removed this case to the United States District Court for the District of Nevada pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (Pet. Removal ¶ 6).  Plaintiff now moves to remand this case for lack of subject matter jurisdiction under CAFA. (*See generally* Mot. Remand, ECF No. 10).

## II. <u>LEGAL STANDARD</u>

Federal courts are of limited jurisdiction and possess only that jurisdiction which is authorized by either the Constitution or federal statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994).  Pursuant to the Class Action Fairness Act ("CAFA"), a federal district court has jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a

State different from any defendant," so long as the class has more than 100 members. 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B). Generally, courts "strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014). "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id.* As noted above, to meet the diversity requirement under CAFA, a removing defendant must show "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). "Thus, under CAFA, complete diversity is not required; 'minimal diversity' suffices." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).

## III.   DISCUSSION

In her Motion to Remand, Plaintiff claims that this case should be remanded for lack of subject matter jurisdiction because Defendant failed to meet its burden to show that the amount in controversy exceeds $5,000,000. (Mot. Remand 1:21–2:2).[1] Specifically, Plaintiff argues that Defendant erroneously based its damages calculation using the past six years of FT Fees for remote purchases, even though some of the states involved in this class action have a shorter statute of limitations for breach of contract claims. (Reply 2:21–5:7, ECF No. 20). Further, Plaintiff argues that Defendant's calculation of attorneys' fees, which Defendant alleges brings the amount in controversy over the $5,000,000 threshold, is based on too large of a percentage of the prospective damages. (Mot. Remand 8:26–10:12).

---

[1] The parties do not dispute that the diversity and numerosity requirements for CAFA subject matter jurisdiction have been met.

Defendant responds that it met its burden to establish the CAFA amount in controversy by demonstrating that the combination of the estimated damages and attorneys' fees exceed $5,000,000. (Resp. 5:14–21, ECF No. 18). Defendant argues that using six years of data elicited a proper damages estimation because "affirmative defenses [like statute of limitations] should not be considered in evaluating the amount in controversy for removal purposes." (*Id.* 7:25–26) (citing *Green v. Harley-Davidson, Inc.*, 965 F.3d 767 (9th Cir. 2020)). Finally, Defendant maintains that its calculation of attorneys' fees is reasonable based on typical percentages awarded as fees in class action cases. (*Id.* 8:9–10:12).

To satisfy CAFA's amount in controversy requirement, a removing defendant must plausibly assert that the amount in controversy exceeds $5,000,000. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). This requires only a "short and plain statement" of the grounds for removal. 28 U.S.C. 1446; *Dart*, 135 S. Ct. at 553-54. But where "the plaintiff contests, or the court questions, the defendant's allegation" in its notice of removal, further evidence establishing that the amount in controversy meets the jurisdictional minimum is required. *Dart*, 135 S. Ct. at 554. Although no presumption against removal exists, the Court must determine, "by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* "The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra*, 775 F.3d at 1198. Where a defendant relies on a chain of reasoning and assumptions to establish the amount in controversy, both must be reasonable. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015).

In the present case, Defendant's Petition for Removal identifies $4,733,577.36 in assessed FT Fees that would be at issue as damages in this case. (Pet. Removal ¶ 31); (Resp. 5:18). Additionally, based on an estimated award of 25%, Defendant claims that potential

attorneys' fees would amount to $1,144,440.74. (Resp. 5:18–20).  As such, Defendant alleges that the amount in controversy in this case is approximately $5,878,018.10, which exceeds CAFA's threshold.  Plaintiff's Motion to Remand challenges the voracity of Defendant's calculations, and thus, it is now Defendant's burden to demonstrate by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. *Dart*, 135 S. Ct. at 554.

### A.     Damages Calculation

To support its claim that the damages at issue in this case are approximately $4,733,577.36, Defendant provides the data it used to create this calculation.  Defendant explains that since May 27, 2015, it has maintained records regarding the assessment and collection of FT Fees for credit and debit card purchases at six of its divisions: Amegy Bank of Texas, California Bank & Trust, National Bank of Arizona, Nevada State Bank, Vectra Bank Colorado, and Zions First National Bank (Utah). (Haden Decl. ¶ 3, Ex. A to Resp., ECF No. 18-1); (Resp. 7:1–6).  The data from these divisions tracks whether the FT Fee was assessed in a remote or in-person transaction. (*See* FT Fee Chart, Ex. A to Resp.).  Defendant explains that a remote purchase is one where the card was not present at the point of sale, indicating an online transaction. (Resp. 6:2–6).  In contrast, an in-person transaction is one where the purchaser physically presents the card to the merchant. (*Id.*).  To estimate the damages at stake in this case, Defendant used the data for remote transactions, reasonably assuming that customers charged with FT Fees for online purchases will claim that the transaction was made while the accountholder was physically present in the United States. (*Id.* 6:6–9, 7:17–8:6).  Defendant arrived at its $4,733,577.36 estimate by adding together all remote transactions where FT Fees were assessed in each division for the past six years. (FT Fee Chart, Ex. A to Resp.).

However, the Court agrees with Plaintiff that basing the damages calculation using the past six years of data is overbroad.  To determine the appropriate time-period, Defendant

should have considered the applicable statute of limitations in each state for breach of contract claims because the class is only made up of account holders that incurred FT Fees "within the applicable statute of limitations." (Compl. ¶ 43). As Defendant points out in its Petition for Removal, "accounts with [Defendant] and its divisions are governed by . . . the laws of the applicable state." (Pet. Removal ¶ 23). Therefore:

> [t]he relevant limitations period for each of the National Class members depends upon the state in which their branch of opening is located or the division of Zions holding the account. Breach of contract claims in Nevada, Utah, Arizona, Oregon, New Mexico, and Washington are subject to a limitations period of six (6) years. *See* Nev. Rev. Stat. § 11.190(1)(b); Utah Code Ann. § 78B-2- 309; A.R.S. § 12-548(A)(1); ORS § 12.080; NMSA 1978, § 37-1-3, RCW § 4.16.040. Breach of contract claims in  Texas and California are subject to a limitations period of four (4) years. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a); Cal. C.C.P. §337. Breach of contract claims in Colorado are subject to a three (3) year limitations period. *See* C.R.S. § 13-80-101(1)(a).

(Pet. Removal ¶ 24). In calculating its damages estimate, Defendant should not have used a blanket period of 6 years, because now the estimate includes two extra years of data for its Texas and California divisions and three extra years of data for its Colorado division, amounting to an overestimate of hundreds of thousands of dollars. Put differently, Defendant's estimate includes assessed FT Fees that members of the class would not be able to claim as damages, and thus, those fees should not be included in the damages estimate. A more appropriate estimate uses six years of data for the Nevada, Arizona, and Utah divisions, four years of data for the Texas and California divisions, and three years of data for the Colorado division, which results in approximately $4,336,935.93.[2] (*See* FT Fee Chart, Ex. A. to Resp.); (Reply 3:5–19).

---

[2] A four-year statute of limitations would cover the period between February 17, 2017, and February 17, 2021. The Texas division reported $163,241.26 in remote debit and credit card transactions where FT Fees were assessed in 2017, $199,914.90 in 2018, $198.452.65 in 2019, $202,866.66 in 2020, and $31,252.99 through February 17, 2021, for a total of $795,728.46. The California division reported $85,515.05 in 2017, $94,002.01 in 2018, $95,593.90 in 2019, $101,724.02 in 2020 and $15,075.51 through February 17, 2021, for a total of $391,910.69. (*See* FT Fee Chart, Ex. A to Resp.).

While *Green v. Harley-Davidson, Inc.*, does hold that it is improper to consider a statute of limitations *affirmative defense* when calculating the amount in controversy, in the present case, the statute of limitations is not being used as an affirmative defense. 965 F.3d 767, 774. Instead, the state statutes of limitations are merely a tool to determine the period of time over which to assess damages.  Without identifying the upper and lower bounds of the class, there is no way to determine "the amount at stake in the underlying litigation." *Id.* (citing *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 ((9th Cir 2016)) ("The amount in controversy represents only the 'amount at stake in the underlying litigation,' not the likely liability.").  Therefore, a better estimate of the damages in this case is $4,336,935.93. *Cf Cantaro Castillo v. Western Range Association*, 777 Fed. App'x 866, 867–68 (9th Cir. 2019) (calculating the damages in a breach of contract case using the appropriate state statute of limitations to determine the amount in controversy under CAFA).

**B.     Attorneys' Fees Calculation**

With an estimated damages claim of $4,336,935.93, the attorneys' fees award needs to amount to at least 16% of the total award in order to meet the CAFA threshold.[3]  Defendant claims that a 25% percent award is appropriate here, which would place the amount in

---

A three-year statute of limitations would cover the period between February 17, 2018, and February 17, 2021. The Colorado division reported $30,337.36 in remote debit and credit card transactions where FT Fees were assessed in 2018, $30,402.16 in 2019, $28,690.51 in 2020, and $4,429.15 through February 17, 2021, for a total of $93,859.18. (*Id.*).

Therefore, the total estimate would include $795,728.46 from Texas, $391,910.69 from California, $93,859.16 from Colorado, $508,954.19 from Arizona, $1,954,850.39 from Utah, and $591,633.02 from Nevada, for a total of $4,336,935.93. (*Id.*).

[3] As explained *infra* fn.4, the attorney fees calculation is only based on $4,243,076.75. 16% of $4,243,076.75 is $678,892.28.  Adding together the estimated damages award of $4,336,935.93 and the estimated 16% attorney fees award of $678,892.28 equals an amount in controversy of $5,015,828.21.

controversy well over $5,000,000.[4]  Plaintiff does not dispute that attorneys' fees should be included in the amount in controversy, but rather argues that the 25% benchmark is too high. (Reply 5:8–7:15).

"Where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Lowdermilk v. United States Bank National Assoc.*, 479 F.3d 994, 1000 (9th Cir. 2007) (internal citations omitted). *See also Fritsch v. Swift Trans. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."). Here, the parties do not dispute that attorneys' fees in breach of contract cases are authorized by statute in Texas, Arizona, California, Nevada, and Utah. *See* ARS § 12-341.01; Texas, § 38.001; Cal. Civ. Code § 1717; Utah Code §78b-5-826; NRS § 41.600.  Therefore, a 25% fee award would amount to $1,060,769.19.[5]

Plaintiff argues that 25% is an inappropriate estimate for attorneys' fees because in *Fritsch v. Swift Transportation Co.*, the Ninth Circuit refused to adopt a *per se* equitable rule that the amount of attorneys' fees in controversy in class actions is 25% of all other alleged recovery because "the defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence." *Fritsch* further requires that a defendant make this showing by producing "summary-judgment-type evidence." *Id.* at 794.

The Court finds that Defendant has not met its burden to show by a preponderance of the evidence that a 25% rate for calculating attorneys' fees is appropriate in this case.  The only

---

[4] *See infra* fn.5.

[5] Since Colorado does not have a statute authorizing attorney fees for breach of contract claims, the attorney fees calculation cannot include the Colorado damages, so $93,859.18 must be subtracted from $4,336,935.93. Therefore, the attorney fees calculation is based on $4,243,076.75.  25% of 4,243,076.75 would be an attorney fee award of $1,060,769.19, leading to an amount in controversy of $5,397,705.12.

evidence that Defendant produces to support its position is that other cases have approved a 25% rate for attorneys' fees. (*See* Resp. 9:17–10:13). The Court does not question that a 25% rate can be an appropriate rate to calculate attorneys' fees, but it is Defendant's burden to prove its appropriateness *in this case*. While Defendant claims that the "reasonableness of a 25% estimate is demonstrated by these [other] cases," *Fritsch* explicitly states that the burden of proof on Defendant is not merely the reasonableness of the fee requested, but must be supported by evidence. *Id.* at 795 ("Unlike the Seventh Circuit, where the defendant need show only "a reasonable probability" that the amount in controversy exceeds the minimum, we require a removing defendant to prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence."); (Resp. 10:8). Other than citing to previous cases where courts approved a 25% attorneys' fee rate, Defendant provides no evidence to support its own request for 25%, and thus, the Court has no ability to evaluate whether a 25% rate in this case is reasonable. *See, e.g.*, *Anderson v. Cindys Cleaning Service, LLC*, No. CV20-4569 PSG, 2020 WL 5057472, at *5 (C.D. Cal. Aug. 27, 2020) (rejecting an attorneys' fees estimate for the purposes of determining amount in controversy because defendant provided "zero evidence to support its 25% estimate"); *Zhao v. RelayRides, Inc.*, No. 17-cv-04099-JCS, 2017 WL 6336082, at *17 (C.D. Cal. Dec. 12, 2017) ("assuming that future attorneys' fees are properly considered when determining whether the amount in controversy is met, the amount of such fees must be supported by sufficient evidence to show that it is not speculative"). *But see*, *Vasquez v. RSI Home Products*, No. 8:20-cv-01494-JWH-JDE, 2020 WL 6778772, at *12 (C.D. Cal. Nov. 12, 2020) (approving a 25% attorneys' fees estimate for purposes of amount in controversy when plaintiff's counsel cited cases where he personally received a fee award exceeding 25% of the total award).

Accordingly, the Court will not consider attorneys' fees in the amount in controversy calculation. Since all damage estimations in this case are well below $5,000,000, the Court

finds that the CAFA amount in controversy is not met, and thus, Plaintiff's Motion to Remand is granted because this Court lacks subject matter jurisdiction.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand, (ECF No. 10), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss, (ECF No. 31), is **DENIED as moot**.

The Clerk of Court shall close this case.

**DATED** this __28__ day of March, 2022.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT